### PEOPLE v. THORNE.

1. EMBEZZLEMENT—EVIDENCE—SUFFICIENCY.
   On a prosecution for larceny by embezzlement under section 11570, 3 Comp. Laws, by converting money supplied accused with which to purchase mining stock, evidence examined, and *held*, sufficient to go to the jury on the question of fraudulent intent.

2. SAME — FRAUDULENT CONVERSION — SUBSEQUENT RELATIONS OF PARTIES.
   Where, on a prosecution for larceny by embezzlement, a justifiable inference arises that accused converted the money of the complaining witness to uses other than that for which it was supplied him, with a fraudulent intent, the offense is made out, and the subsequent relations of the parties, claimed to establish the relation of debtor and creditor, cannot change the fact, though they may rebut the inference of guilt.

3. CRIMINAL LAW—TRIAL—REMARKS OF COUNSEL.
   Where, on a prosecution for embezzlement, respondent's counsel on cross-examination drew from the complaining witness the statement that he had swindled her out of other funds,

whereupon counsel confronted her with a paper she had signed releasing respondent from certain claims, a statement by the prosecuting attorney, "If we go into that I cannot see any place to stop; I shall want to show he got $12,000 of this woman's money, and of her mother's money, and all she has to show for it is personal notes and bill of sale," was not error.

4. WITNESSES—IMPEACHMENT—HEARSAY.

Where a witness for respondent on a criminal trial admits his friendly relations with respondent, a letter written to respondent by him in which he warns respondent to "get under cover," etc., is admissible to show his connection with respondent, though it contains statements of fact which the jury might believe, and to prove which it is incompetent; and where the court discriminates clearly between the proper and improper use of the letter, and strikes out portions of it, there is no error.

Error to recorder's court of Detroit; Phelan, J. Submitted January 24, 1907. (Docket No. 144.) Decided April 30, 1907.

Walter W. Thorne was convicted of larceny under section 11570, 3 Comp. Laws, and sentenced to imprisonment for not more nor less than one and one-half years in the State prison at Jackson. Affirmed.

*A. B. Hall*, for appellant.

*Ormond F. Hunt*, Prosecuting Attorney, and *Frank F. Bumps*, Assistant Prosecuting Attorney, for the people.

HOOKER, J. The defendant was convicted of and sentenced for the offense of statutory larceny, under section 11570, 3 Comp. Laws, which provides that:

"(11570) SEC. 34. If any person to whom any money, goods, or other property which may be the subject of larceny, shall have been delivered, shall embezzle or fraudulently convert to his own use, or shall secrete with the intent to embezzle, or fraudulently use such goods, money, or other property, or any part thereof, he shall be

deemed by so doing to have committed the crime of larceny."

The complaining witness was a Miss Packard, who testified that the defendant importuned her to allow him to purchase for her a thousand shares of Gold Coin mining stock, at 75 cents a share, which he stated to be the bottom price for the stock, and she gave him $750 for that purpose. He told her that the stock would come in his name, with several thousand more shares of the same stock, and he reiterated the statement after the purchase by saying that he had received said larger number of shares. The testimony shows that only 1,000 shares were sent, and they came in his name, through a bank, and with a collection account of $370 against them. He never paid all of this collection, and never received or delivered the stock, although she frequently asked him to do so. It was claimed that Miss Packard's conduct and dealings with him in relation to this matter established the relation of debtor and creditor, and that this was inconsistent with his guilt, and made it the duty of the court to direct a verdict of acquittal. It was also claimed that there was nothing in the case indicating concealment, or a felonious disposition, apparently upon the theory that his free admission at all times that the stock was at the bank subject to collection charges showed an absence of both.

We are of the opinion that the court did not err in sending the question to the jury. The evidences of misrepresentation regarding the stock as an inducement to Miss Packard to purchase, the indication that all of her money was not required, or used in paying for the stock, lead to a justifiable inference that he converted it to other purposes, with a fraudulent intent, and, if so, the offense was complete, and what the relations of the parties became afterward could not change that fact, though they might tend to rebut such inference.

### Statement of the Prosecutor.

Error is assigned upon the statement of the prosecuting

officer that "if we go into that, I shall want to show this jury that he got $12,000 of this woman's money, of her mother's money, and all she had to show for it is his personal notes and bill of sale." This statement came about in this way: Upon cross-examination of the complaining witness, defendant's counsel showed that, as treasurer of the Wolverine Leather Company, she signed a testimonial of character and ability, commendatory of the defendant, and he examined her at length about it. She attempted to explain that she knew it was untrue, but did it out of commiseration for his wife and baby, and that she said to the defendant at the time: "What would people think of me signing anything like that, after what he had swindled me out of?" etc. Defendant's counsel extracted from her the statement that he swindled her out of money in connection with the affairs of the leather company in which a large investment by her was lost. The dialogue continued as follows:

"A. His expense account there was overdrawn $700 in three months.

"Q. Didn't you sign a release, as an officer of that company, releasing Mr. Thorne from liability in that company, in consideration of certain services that he had rendered in organizing the company?

"Mr. Bumps: I object to the question.

"The Court: No; I think I will allow the answer now, Brother Bumps, in view of the questions and the statement she made on the stand. I was in hopes that this entire matter could be kept out of this case.

"Mr. Bartlett: No, your honor; the defense is perfectly willing to go into every phase of this case.

"The Court: I don't care, Mr. Bartlett, what the defense is willing to do. I believe it only just to the defendant to have her give her answer to that question. Read the question again, Mr. Reporter. (Question read.)

"A. I released—the release I signed called for the $750 or over $700; that was it, of his expense account that he had overdrawn; that was the release I signed.

"Mr. Bartlett: Now, perhaps, this will refresh your recollection, Miss Packard. I offer this in evidence.

"The Court: I think I will let it in now, in view of the statement.

"*Mr. Bumps:* He drew it out himself, your honor.   I did not ask it.   He was fishing for incompetent testimony, and he got it in.   Now he wants to contradict it.   I object to it.

"*Mr. Bartlett:* Nothing of the kind.   Your witness made a statement that Mr. Thorne had swindled her out of several thousand dollars.

"*The Court:* Just a moment, Mr. Bartlett.

"*Mr. Bumps:* If we go into that, your honor, I cannot see any place to stop.   If we go into that, I shall want to show this jury that he got $12,000 of this woman's money, and of her mother's money, and all she has got to show for it is personal notes and a bill of sale.

"*Mr. Bartlett:* You cannot show anything of the kind.   I object to Mr. Bumps making a statement of anything of that kind.

"*The Court:* Just a moment now.   Proceed with the cross-examination, Mr. Bartlett.   The object of offering this testimony at the present time is to refute a statement made by the witness on the stand that the respondent had swindled her out of money in connection with the Wolverine Leather Company, and now counsel for defendant desires at this time to submit to the jury a statement signed by this witness in relation to that very same matter, and the court believes it proper and just at this time that he should be permitted to have that statement.

"*Mr. Bumps:* The whole matter, I move that that whole subject, be stricken from the record as incompetent and immaterial.

"*The Court:* I would cheerfully do that my Brother Bumps, but I have no power to strike from the minds of these jurors whatever impression the complaining witness may have made on them when she made that statement.

"*Mr. Bartlett:* I think that statement was entirely improper for a witness to make.

"*The Court:* Now, Mr. Bartlett, the prosecuting attorney and I are discussing it.   You got your question and answer from the witness.   It was a question you asked for, and you got an answer to it."

The cross-examination continues through several pages of the record, and before it was through counsel had succeeded in getting before the jury enough of the Wolverine Leather Company transaction to show that her claim regarding his conduct was not altogether groundless.

While it is true that the bare question of whether he swindled her in the Wolverine Leather matter was not admissible to prove the charge upon which he was being tried, it was to some extent, at least, admissible, to explain the circumstances under which the recommendation and release were given, and to overcome the damaging effect of the former upon the complainant's charge. Counsel not only courted full inquiry, but he called out the testimony himself. He is not therefore in a situation to complain of its introduction. The language of the prosecutor was in the nature of an objection to this proof of the release, a protest against its introduction, and notice that he should desire to show what led up to it, proof that would in that case become competent. Under the circumstances it was not error. Moreover, while an objection was made, no exception was taken; counsel being apparently satisfied with the ruling of the court.

### The Arena Stock.

The complaining witness was allowed to state that before the transaction with the defendant complained of she purchased through him, paid for, and received some Arena stock, and had not complained regarding the transaction. Counsel for defendant has failed to point to anything injurious in this testimony, while the references to the testimony in the prosecutor's brief indicate that it was not injurious.

### The Powell Letter.

One Powell was called by the defense, to show that $182.50, alleged to have been received by defendant from the proceeds of the sales of the Gold Coin stock, was applied upon the Wolverine Company pay roll; Miss Packard being a large stockholder in that company. On cross-examination the prosecutor sought to discredit him by showing his relations to the defendant. He extracted from him the admission that he was specially friendly to defendant, that after he left Detroit for the West he kept him "posted in what was going on here;" and by a letter

which he admitted sending to him that he gave him information of an intention on the part of a Capt. Horn, who was connected with the Wolverine transaction, to try to "get him back," and warned defendant to "get under cover," that Horn was going to get Miss Packard to sign some kind of a paper, and that "brass buttons would be on his track by tomorrow night." This letter contained the following:

" ' Received a letter yesterday from Jackson. She wants to know where to write you, etc. Donaldson, Emile, and Johnson of Seely's made out the inventory. It was certainly very cleverly done. Johnson represented the Captain, and Emile represented Miss Packard, and Donaldson was the go-between. In other words, Miss Packard was not represented at all. Everything was inventoried at red flag prices. Now they have Miss Packard to believe that you did the steal, instead of—well, you know.'

"*The Court:* Do you claim that is competent in a criminal trial, what was done in the absence of this defendant down there, about the inventory? This is something that was done, you know, in this man's absence. It was something that Capt. Horn had done; I presume, had an inventory made there.

"*Mr. Bumps:* I do not think that part of it is competent.

"*The Court:* I am pretty sure it is not. Well, it is before the jury.

"*Mr. Bartlett:* It is before the jury.

"*Mr. Bumps:* It is more to the advantage of the defendant than a detriment, if it is.

"*The Court:* I think that is true.

"*Mr. Bumps:* So, it not being competent, I will ask to have that part of it stricken out in relation to the inventory.

"*The Court:* It may be stricken from the record.

"*Mr. Bartlett:* Mr. Bumps is going to read that entire letter and then afterwards objections be made and stricken out, possibly to get it before the jury.

"*Mr. Bumps* (reading): 'I do not dare trust any one for your sake until this all blows over.'

"*Mr. Bartlett:* Is that competent, your honor?

"*Mr. Bumps:* That goes with the rest of the letter, and shows that this man is in hiding. He is keeping him informed.

"*The Court:* I know, Mr. Bumps, but there is no proof in this case; you have not shown anything where this man is in hiding. It is an inference indulged in by the writer of that letter that this man is in hiding."

It was competent (within the discretion of the trial court) to show this witness' connection with the defendant. The letter was admissible for this purpose, notwithstanding the fact that a jury might believe the statements contained in it which were hearsay, and to prove which the letter was not competent evidence. The court discriminated clearly between the proper and improper use of the letter, even striking out some portions, notwithstanding the fact that they tended to show that this witness was in collusive relations with defendant regarding doubtful transactions. We think there was no error in this.

### Requests to Charge.

Of the requests to charge, it is sufficient to say that some of them are argumentative, and were properly refused. The sixth was sufficiently covered by the charge.

### Failure to Instruct.

It is said that the trial judge did not explain to the jury what was necessary to be proven in order to show an intent to embezzle or fraudulently convert. No exception was taken to the failure in relation to this. We think, however, that the charge made the subject sufficiently clear.

### Mason's Testimony.

Mr. Mason, the bank's cashier, testified that the stock came subject to a charge of $370. The court said that, "upon the proposition of defendant's intent, the jury might take into consideration the value of the stock as testified to by Mason, when it arrived at the bank." We think that this could not well be misunderstood. The exact complaint we take to be that this was a suggestion that Mason had stated that the cost of stock to defendant was only $370. There was little opportunity for a mistake

as to what Mason said, and we think the case should not be reversed upon this ground. It must have been evident that all that was meant was that Mason's testimony that the stock came to the bank subject to a claim of $370 was proper to be considered upon the subject of the price paid by the defendant in determining his intent.

The judgment is affirmed.

MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.

BLAIR, J. The record does not disclose that any exception was taken to the reading of portions of the Powell letter, nor any motion to strike out or request to charge concerning it. I therefore concur in the result.